**COMMONWEALTH of Kentucky, CRIME VICTIMS COMPENSATION BOARD, Movant,**

v.

**Willard MILLER and William Arnold Miller, Respondents.**

Supreme Court of Kentucky.

Nov. 3, 1980.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for movant.

Dale W. Henley, Winchester, for respondents.

PER CURIAM.

On October 1, 1977, John B. Adams collided with a parked pick–up truck on the streets of Berea, Kentucky, while driving in an intoxicated condition. Without stopping he sped from the scene and shortly thereafter struck a mini–bike ridden by John W. Miller, aged 12, and his nephew William A. Miller, Jr., aged 6. Both children were killed. Adams left the scene of this collision also, and was later apprehended by the Kentucky State Police. On November 9, 1977, Adams pled guilty to two counts of second–degree manslaughter and received a five–year sentence for each count, the sentences to be served concurrently.

The fathers of the infant victims filed claims with the Crime Victims Compensation Board. The claims were denied on the basis that they arose out of the operation of a motor vehicle and were thus excluded from the definition of "criminally injurious conduct" as defined in KRS 346.020(3). The claimants sought review of this decision and on June 21, 1978, the full Board adopted the order denying the claims. The claimants then appealed to the Franklin Circuit Court, and on November 21, 1978, that court reversed the decision of the Board and remanded the claims for an award of benefits. The Board appealed the decision of the Franklin Circuit Court and the Court of Appeals affirmed. The case is before us on grant of discretionary review. We reverse.

The eligibility requirements of the Crime Victims Compensation Act are set out in KRS 346.050(1) as follows:

"(1) Except as provided in subsection (2) and (3) of this section, the following persons shall be eligible for awards pursuant to this chapter:

(a) A victim of criminally injurious conduct;

(b) A surviving spouse, parent or child of a victim of criminally injurious conduct who died as a direct result of such conduct;

(c) *Any other person dependent for his principal support upon a victim of criminally injurious conduct who died as a direct result of such crime.*

" 'Criminally injurious conduct' is defined in KRS 346.020(3) as follows:

"(3) 'Criminally injurious conduct' means conduct that occurs or is attempted in this jurisdiction, poses a substantial threat of personal injury or death, and is punishable by fine, imprisonment or death. Acts which, but for the insanity or mental irresponsibility or lack of capacity of the perpetrator, would constitute criminal conduct shall be deemed to be criminally injuri-

ous conduct. *The operation of a motor vehicle, motorcycle, train, boat, aircraft or other vehicle in violation of law does not constitute a criminally injurious conduct unless the injury or death was intentionally inflicted or the operation thereof was part of the commission of another criminal act.*" (Emphasis added.)

The parties agree that Adams' conduct was not intentional. The dispute focuses on the phrase ". . . or the operation thereof was part of another criminal act" in paragraph (3) of KRS 346.020.

■ We conclude that the legislature, by the use of the above–mentioned phrase, meant to include only other criminal acts in which the use of a motor vehicle is merely incidental to the commission of such act, as where a robbery or murder has been committed and the vehicle is used as a getaway car. Here, none of the violations committed by Adams prior to his striking the two boys could have been accomplished without using a motor vehicle and the statute says plainly that ". . . operation of a motor vehicle in violation of law" does not constitute criminally injurious conduct.

■ Respondents (claimants below) urge us to use the manslaughter of each of the children in this tragic incident as a "bootstrap" to include the other in the Act's coverage. We do not feel that such a device is logically defensible in a situation where, as here, the deaths occurred in a single transaction. Such a rule would allow recovery under the Act in multiple death occurrences but would deny recovery in a factually identical situation where only one injury or death occurred. We hold that where there is a single injury–producing impact and the only "criminal act" performed by an automobile driver prior to such impact is the operation of a motor vehicle in violation of law, no recovery is possible.

The decision of the Court of Appeals and the judgment of the Franklin Circuit Court are reversed. This case is remanded to the Franklin Circuit Court with directions to enter judgment in accordance with this opinion.

PALMORE, C. J., and CLAYTON, LUKOWSKY and STEPHENSON, JJ., concur.

AKER, J., files a dissenting opinion in which STERNBERG, J., joins.

AKER, Justice, dissenting.

The stated purpose of the Crime Victims Compensation Act is to give financial relief to needy innocent victims of crime. KRS 346.010. Given this purpose, I feel that the court's interpretation of this statute is unnecessarily restrictive. When a statute has a clearly stated purpose, it should be liberally construed to give effect to that purpose. *Department of Revenue v. Derringer*, Ky., 399 S.W.2d 482 (1966).

The Board argued in its brief that larger sums would have been appropriated under the Crime Victims Compensation Act if the legislature had intended to compensate victims whose injuries were inflicted by automobiles. This argument loses its force when it is considered that many of these kinds of injuries would be compensated under the Motor Vehicle Reparations Act, KRS 304.39–010 et seq., and that any double recovery under the Crime Victims Compensation Act is disallowed by KRS 346.140.

It seems to me that the effect of the decision of the majority is to place too much emphasis on the type of instrument used to commit the crime. Obviously the legislature meant to exclude from coverage the victims of purely negligent conduct by automobile drivers. But when the driver's conduct rises to the level of criminal activity, as it does in this case, the victims of his crime should be compensated regardless of the type of instrument used to inflict them.